THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION CINCINNATI

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

KHALID BRYANT,

    Defendant,

Case No.1:16cr060

Judge Michael R Barrett

## ORDER

This matter is before the Court on Defendant's Motion to Suppress Evidence (Doc. 16). The Government filed a response (Doc. 18). The Court conducted an evidentiary hearing on January 9, 2017. Following the hearing, the Government filed a Supplemental Memorandum (Doc. 25), Defendant filed a Supplemental Memorandum (Doc. 26), the Government filed a reply (Doc. 27) and Defendant filed a response (Doc. 28).

### I. FACTS

On January 19, 2016, the Cincinnati Police Department Violent Crime Section was at the King's Run Market located at 4661 Kings Run Dr., Cincinnati, Ohio. (Gov. Ex. 1). The officers' purpose in being at the location was to apprehend a wanted suspect other than Defendant. Officers took up various positions of surveillance and investigation in and around the market. The location of the market itself was identified by CPD and was testified to by Officer Rogers as a high-crime area. Officer Rogers took up a surveillance position as depicted in Government's Exhibits 2 and 3. Officer

Rogers was in an unmarked vehicle. He was dressed in plain clothes but wearing a tactical vest. Officer Rogers is an 18-year veteran of the CPD with 16 years in the Violent Crime Section. He also has SWAT training.

Officer Rogers testified to his own familiarity with the market and the widespread drug activity in the market itself, as well as in the parking lot. He has made numerous arrests at that location, some involving armed suspects.

On January 19, upon the observance of CPD cars in front of the premises, Defendant and other individuals fled from the location. Officer Rogers observed Defendant running towards a 2004 Kia Sorrento. Officer Rogers' attention was drawn to Defendant because of the manner in which he was running "as if a pack of dogs was chasing him." He also observed Defendant's attire, noting that he was nicely dressed.

When Defendant reached the vehicle, he noticed that Defendant was trying to pull something "violently" out of his pants. Whatever the object was, it appeared to be caught in his clothing. Officer Rogers did not yell commands while Defendant was digging in his pants so as not to startle him. Officer Rogers then observed Defendant place something under the front passenger seat of the vehicle. Once he observed Defendant pull the object out of his pants and place it under the seat, Officer Rogers yelled at Defendant to stop and put his hands up. He ordered Defendant to turn around and walk towards him. Defendant complied with his orders. Officer Rogers then handcuffed Defendant for his own protection and moved him to the rear of the vehicle. Officer Rogers then observed the subject firearm under the front passenger seat of the vehicle without reaching underneath the seat. At that point, Officer Rogers arrested

Defendant. Upon returning Defendant to District 5, it was determined that he had also an open warrant.

## II.   ANALYSIS

Defendant argues Officer Rogers was acting on a hunch, and what the officer observed amounted to nothing more than reasonable suspicion prohibiting further intrusion and detention. The Government contends that based upon the observation of Defendant's actions and the totality of the circumstances, Officer Rogers had reasonable grounds to believe the vehicle contained evidence of a crime.

In *United States v. Caruthers*, 458 F.3d 459 (6th Cir. 2006), officers received a radio run for shots fired, which contained a description of the suspect's clothing they had received from an anonymous phone call. Upon arriving in the area, officers observed a similarly dressed individual and blocked an alleyway. When an officer commanded the individual to come to him, he "took off" in a hurried fashion. He was observed leaning over prior to his detention. Officers put him in the back of a locked patrol cruiser and returned to the area where he was leaning over and from there recovered a firearm.

The Sixth Circuit explained in *Caruthers* that, "[i]n evaluating the constitutionality of a *Terry* stop, we engage in a two-part analysis of the reasonableness of the stop." *Caruthers*, 458 F.3d at 464 (quoting *United States v. Davis,* 430 F.3d 345, 354 (6th Cir.2005)). "We first ask 'whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion.' " *Id.* (quoting *United States v. Garza,* 10 F.3d 1241, 1245 (6th Cir.1993)). If the stop was proper, "then we must

determine 'whether the degree of intrusion ... was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.' " *Id.* (omission in original) (quoting *Garza,* 10 F.3d at 1245). *Id.*

The Sixth Circuit recognized that a radio run based on an anonymous call would have itself, been insufficient. The Court, however, considered the totality of the circumstances in light of *Illinois v. Wardlow*, 528 U.S. 119 (2000). In *Wardlow* the Court held that an individual's presence in a high-crime area, standing alone, is not enough to support reasonable, particularized suspicion that person is committing a crime, "[b]ut officers are not required to ignore relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Based upon this, the Court in *Caruthers* considered several factors before concluding that the stop was proper.

For example, the Court considered the defendant's furtive movement, explaining that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Caruthers*, 458 F.3d at 466 (quoting *Wardlow*, 528 U.S. at 124). "The behavior at issue in *Wardlow* was 'unprovoked flight upon noticing the police,' as the defendant 'looked in the direction of officers and fled.'" *Id.* "However, flight is not the only type of 'nervous evasive behavior.' Furtive movements made in response to police presence may also properly contribute to an officer's suspicions." *Id.* (citations omitted).

Moreover, the Court examined "contextual considerations." In doing so, the Sixth Circuit explained:

> Officer Stocks encountered Caruthers late at night (1:20 A.M.) in a high-crime area. Although these factors may not, without more, give rise to

4

reasonable suspicion, *see e.g., id, Bennett v. City of Eastpointe,* 410 F.3d 810, 830, 831 (6th Cir. 2005); *United States v. Townsend,* 305 F.3d 537, 543 (6th Cir.2002); *United States v. Dennison,* 410 F.3d 1203, 1213 (10th Cir.), *cert. denied,* 546 U.S. 955, 126 S.Ct. 468, 163 L.Ed.2d 356 (2005); *United States v. Diaz–Juarez,* 299 F.3d 1138, 1142 (9th Cir.2002), *cert. denied,* 538 U.S. 934, 123 S.Ct. 1601, 155 L.Ed.2d 334 (2003), they are relevant to the reasonable suspicion calculus, *see, e.g., Wardlow,* 528 U.S. at 124, 120 S.Ct. 673; *Adams v. Williams,* 407 U.S. 143, 147–48, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Watkins v. City of Southfield,* 221 F.3d 883, 888–89 (6th Cir.2000); *United States v. Harris,* 192 F.3d 580, 584–85 (6th Cir.1999); *United States v. Dawdy,* 46 F.3d 1427, 1429 (8th Cir.), *cert. denied,* 516 U.S. 872, 116 S.Ct. 195, 133 L.Ed.2d 130 (1995).

*Id.* at 467.

In the instant case, Defendant was in a high-crime area, fleeing from police officers. He was dressed nicely, as if he were going out. Officer Rogers testified that someone dressed the way he was, running as hard as he was, looked out of place. Moreover, Defendant was struggling with an object in his waistband. As he got to the car and opened the door, he violently tried to pull the object out of his waistband. Considering all of this, the Court finds that like in *Caruthers*, Defendant's furtive movements and the contextual considerations support a stop in this case.

Next, the Court must decide whether the detention of Defendant was reasonable. To determine whether a detention is reasonable courts examine: (1) whether it was sufficiently limited in time, and (2) if the investigative means used were the least intrusive means reasonably available. *Id.* at 468 (citing *Davis,* 430 F.3d at 354 (quoting *Bennett,* 410 F.3d at 825-826). "[N]o circuit has concluded that detention in the back of a police car automatically turns a *Terry* stop into an arrest." *Id.* (quoting *Bennett,* 410 F.3d at 837); *see also United States v. Bradshaw,* 102 F.3d 201, 211 (6th Cir. 1996), *cert. denied*, 520 U.S. 1178, 117 S.Ct. 1453, 137 L.Ed.2d. 558 (1997). In reviewing the

type and duration of the stop, the Sixth Circuit in *Caruthers* found, based upon the information at hand, placing the suspect in the locked patrol car was reasonable.

In this case, Defendant was detained for a relatively brief period of time. He was detained just long enough for Officer Rogers to complete his investigation – from the time Defendant walked to the rear of the vehicle and was handcuffed until the subject firearm was recovered under the front passenger seat of the vehicle. Defendant was also detained using the least intrusive means reasonably available. That is, Defendant was handcuffed for the officers' protection and placed at the rear of the vehicle while Officer Rogers searched the vehicle. The Court finds this reasonable, particularly when considering the location of the market in a high-crime area with drug activity and frequently armed suspects. Accordingly, the detention of Defendant in this case was reasonable.

Finally, the Court must decide whether the warrantless search of the car in this case falls within the automobile exception. The Sixth Circuit examined the issue in *U.S. v. Smith*, 510 F.3d 641, 647-48 (6th Cir. 2007). The Court explained, "[u]nder the automobile exception, police officers may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Lumpkin,* 159 F.3d 983, 986 (6th Cir.1998) (citations omitted); *Smith v. Thornburg,* 136 F.3d 1070, 1074 (6th Cir.1998) (citations omitted). Probable cause is defined as "'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" *Smith,* 136 F.3d at 1074 (quoting *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990)). The court's determination of whether probable cause existed at the time of the search is a "'commonsense, practical question' to be judged

from the 'totality-of-the-circumstances.'" *Id.* at 1074-75 (citations omitted). In determining whether there was probable cause, the court does not look to events that occurred after the search or to the subjective intent of the officers; rather, the court looks at the "objective facts known to the officers at the time of the search." *Id.* at 1075.

Turning to the present case, the Court finds that when considering the totality of the circumstances, Officer Rogers had probable cause to search the vehicle. Defendant's behavior, including fleeing from the store, struggling with his waistband, violently pulling at his waistband to recover an object, and placing something under the seat, led Officer Rogers to believe there was evidence of a crime present in the vehicle. In other words, based upon his experience, the objective facts known to Officer Rogers at the time of the search led him to believe the object that had been placed under the passenger seat of the vehicle was a firearm. Accordingly, the Court finds the search of the vehicle falls within the automobile exception.

### III. CONCLUSION

Consistent with the foregoing, Defendant's Motion to Suppress Evidence (Doc. 16) is **OVERRULED**.

**IT IS SO ORDERED.**

Michael R. Barrett, Judge
United States District Court